# Exhibit CCC

## Severance and Release Agreement

I understand that my active employment with AIG Employee Services, Inc. (the "Company") will terminate effective May 5, 2017, and the Company is providing me with two weeks' non-working notice pay. Regardless of whether or not I sign this Agreement, I will receive this pay at my current salary (less applicable tax and payroll deductions), from May 5, 2017 through May 19, 2017. I understand that if I sign this agreement, severance pay and outplacement services also will be made available to me on the terms set forth below.

I will receive 20 weeks of severance pay at my current salary. I can choose whether to receive this severance payment as a lump sum payment (less tax withholdings) or as a continuation on payroll (less applicable tax and payroll deductions), by checking the appropriate line at the end of this agreement. If I elect a lump sum payment, medical, dental, vision and basic life coverage as previously elected, will continue through May 19, 2017. If I elect payment by continuation on payroll, severance will also include the continuation (if previously enrolled) of medical, dental, vision and basic life coverage as previously elected through October 6, 2017. Regardless of which option I elect, my eligibility for coverage under the Short Term and Long Term Disability programs and any 401(k) contributions or matches will in all events cease as of May 5, 2017. I also will receive from the Company's outplacement vendor, the Professional Transition Package of outplacement services as determined by the Company. In addition, I will receive additional severance in the form of a short term incentive award payable in a lump sum in the amount of $131,250.00, (less tax withholdings).

In return for the payments and benefits set forth in the preceding paragraph, I agree to waive and release all claims of any kind (whether known or unknown) that I may have against the Company, its affiliated companies, or any benefit plans sponsored by such companies, and the past or present officers, directors, agents, employees, fiduciaries, and plan administrators of such companies (the "AIG Group") which arise from or relate to my employment with the Company or any of its affiliates or the termination of my employment with the Company or any of its affiliates (including, without limitation, claims under the Age Discrimination in Employment Act). I acknowledge that I am not waiving any rights or claims under the Age Discrimination in Employment Act that may arise after the date that I execute this agreement.

This agreement does not modify or affect any vested rights that I may have under the American International Group, Inc. Retirement Plan, the Incentive Savings Plan, or with respect to any restricted stock units or stock options that were granted to me during my employment and which may vest prior to my termination date. If I am a participant in the AIG Long Term Incentive Plan ("LTIP") or other incentive plan, my termination will be considered a termination without Cause (as defined in such plans). I retain any rights that I may have under the LTIP or other such incentive plans for payment of awards under a termination without Cause. The next scheduled LTIP award payout for each LTIP grant, if any, may be reduced by the FICA and Medicare withholdings required in connection with all remaining awards under that particular LTIP grant, to the extent required by the US Tax Code.

Each payment pursuant to this agreement will be treated as a separate payment under Section 409A of the Internal Revenue Code. I fully understand the terms of this agreement and agree to keep the terms of this agreement confidential (i.e., to not disclose the terms other than to my immediate family, tax or legal advisors, to governmental authorities, or as may be legally required) and to not make disparaging comments about the AIG Group. Nothing herein shall prevent me from making or publishing any truthful statement (a) when required by law, subpoena or court order, (b) in the course of any legal, arbitral or regulatory proceeding, (c) to any governmental authority, regulatory agency or self-regulatory organization, or (d) in connection with any investigation by the AIG Group. I will not retain, remove or disclose the AIG Group's confidential, proprietary and/or trade secret information, and I will not, directly or indirectly, on my own behalf or on behalf of any other person or entity, solicit, contact, call upon, communicate or attempt to communicate with any customer or client or prospective customer

or client of AIG Group, where to do so would require the use or disclosure of confidential, proprietary and/or trade secret information (for purposes of this Agreement, "customer or client" shall not include insurance brokers).  I further agree that for a one year period following May 5, 2017, I will not, directly or indirectly, regardless of who initiates the communication, solicit, participate in the solicitation or recruitment of, or in any manner encourage or provide assistance to, any AIG Group employee, consultant, registered representative, or agent to terminate his or her employment or other relationship with the AIG Group or to leave its employ or other relationship with the AIG Group for any engagement in any capacity or for any other person or entity.  Any obligations I may have under another non-disclosure and/or non-solicitation agreement or other restrictive covenant will continue and will remain in full force and effect.

I understand that if I accept employment with the AIG Group, I will no longer be entitled to any portion of the payments set forth in the second paragraph of this agreement that is unpaid as of the day immediately prior to the date such employment commences and, if I received my severance in one lump sum, I will be required to repay the Company a pro rata portion of my severance (determined by the ratio of (i) what would have been the remaining term of my severance period (the period following the date I commence such employment) if I had elected to receive severance paid as extended time on payroll, in full weeks, to (ii) the total weeks of payroll continuation.  For point of clarity, I will not be required to repay the short term incentive award set forth in the second paragraph of this agreement if I accept employment with the AIG Group.  I also understand that I have 21 days to consider this agreement before signing it; that I can revoke this agreement within 7 days after signing it by sending written notice of that revocation to AIG HR Shared Services at 2727 Allen Parkway, W2-00 Houston, TX 77019 or HRSharedServices@aig.com; that the Company has advised me in writing, by this paragraph, to consult with an attorney before signing this agreement; and that the payments and benefits set forth in the  second paragraph of this agreement exceed anything that I am already entitled to receive.  I understand and agree that in order to be entitled to the payments and benefits mentioned in the second paragraph above, I must sign this agreement within 21 days and not revoke it and return it to AIG HR Shared Services at 2727 Allen Parkway, W2-00 Houston, TX 77019 or HRSharedServices@aig.com.

I understand that I may return this agreement via mail or e-mail.  An electronically transmitted signature shall be treated as an original signature for all purposes.

Understood and Agreed to by:

Signature: _____     Date: _____

      Aaron Katzel

Please choose <u>ONE</u> of the following:

_____ I choose one lump sum payment (i.e., payroll end date of May 19, 2017)

_____ I choose extended time on payroll (i.e., payroll end date of October 6, 2017)

                                          COMPLAINANT  002160

# AMERICAN INTERNATIONAL GROUP, INC.

## SEVERANCE PLAN

**(also serving as its ERISA summary plan description)**

**Effective October 1, 2013**

(Amended and Restated March 2, 2016)

CONFIDENTIAL

COMPLAINANT 002161

# TABLE OF CONTENTS

**Page**

ARTICLE I.     ELIGIBILITY FOR SEVERANCE .................................................................... 1
ARTICLE II.    CONDITIONS ON RECEIVING SEVERANCE ......................................................... 2
     SECTION 2.1    Required Conditions ................................................................................. 2
     SECTION 2.2    Failure to Meet Conditions ..................................................................... 2
ARTICLE III.   THE AMOUNT OF SEVERANCE .................................................................... 2
     SECTION 3.1    Calculation of Basic Amount of Severance ........................................... 2
     SECTION 3.2    Effect on STIP Payouts ........................................................................... 3
     SECTION 3.3    Company-subsidized Medical Coverage ................................................ 3
     SECTION 3.4    Outplacement .......................................................................................... 3
     SECTION 3.5    No Entitlement to Other Similar Benefits .............................................. 3
     SECTION 3.6    Participation in Company Benefit Plans and Programs ......................... 3
ARTICLE IV.   HOW AND WHEN SEVERANCE WILL BE PAID ........................................... 4
     SECTION 4.1    Lump Sum Payment ................................................................................ 4
     SECTION 4.2    Extended Time on Payroll ....................................................................... 4
     SECTION 4.3    Effect of Re-employment ........................................................................ 4
     SECTION 4.4    Tax Withholdings .................................................................................... 4
     SECTION 4.5    Right to Set-off ....................................................................................... 5
     SECTION 4.6    Recoupment and Clawback ..................................................................... 5
ARTICLE V.    MISCELLANEOUS PROVISIONS .................................................................. 5
     SECTION 5.1    Amendment and Termination .................................................................. 5
     SECTION 5.2    No Additional Rights Created ................................................................. 5
     SECTION 5.3    Records .................................................................................................... 5
     SECTION 5.4    Governing Law and Construction ........................................................... 6
     SECTION 5.5    Severability ............................................................................................. 6
     SECTION 5.6    Incompetency ......................................................................................... 6
     SECTION 5.7    Death ....................................................................................................... 6
     SECTION 5.8    No Right of Employment ........................................................................ 6
     SECTION 5.9    No Funding .............................................................................................. 6
     SECTION 5.10   Nonassignability ..................................................................................... 6
     SECTION 5.11   Section 409A Provisions ........................................................................ 7
ARTICLE VI.   WHAT ELSE YOU NEED TO KNOW ABOUT THE PLAN ............................. 8
     SECTION 6.1    Plan Administration ................................................................................. 8
     SECTION 6.2    Claims And Appeal Procedure ............................................................... 9
     SECTION 6.3    Your Rights Under ERISA ...................................................................... 11
     SECTION 6.4    Plan Document ........................................................................................ 12
     SECTION 6.5    No Third Party Beneficiaries .................................................................. 12
     SECTION 6.6    Successor Entity; Company Assigns ....................................................... 12
     SECTION 6.7    Other Important Facts ............................................................................. 12
APPENDIX A   DEFINED TERMS AND INTERPRETATIONS ............................................. 14
APPENDIX B   PERFORMANCE MANAGED TERMINATION PROCESS ............................. 18

i

COMPLAINANT  002162

# AMERICAN INTERNATIONAL GROUP, INC.

## SEVERANCE PLAN

### (also serving as its ERISA summary plan description)

---

The Executive Vice President, Transformation, Human Resources and Administration, American International Group, Inc. ("AIG") has adopted this American International Group, Inc. Severance Plan (the "Plan"). The Plan took effect October 1, 2013, and will remain in place until its termination pursuant to Section 5.1 below. Even if the Plan terminates, AIG will honor any benefits that have previously vested and become payable under the Plan.

The purpose of the Plan is to provide severance benefits to eligible Employees (as defined below) of AIG and its consolidated subsidiaries (together with AIG, the "Company") provided their employment terminates under certain qualifying circumstances described below. The Plan replaces and supersedes any and all severance plans, policies and/or practices of each Company in effect for their Employees prior to this Plan's effective date. The Plan is, and is intended to be, an "employee welfare benefit plan" under Section 3(l) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

This document is the Plan's governing plan document and also serves as its ERISA summary plan description. Throughout the Plan, the term "Plan Administrator" is used when the Plan Administrator, your Employer, or one of their delegates is acting in the limited capacity of administering the Plan and determining eligibility for Plan benefits (see Sections 6.1 and 6.2 below for detailed administrative information). All other determinations will be made solely on a discretionary basis, in a settlor capacity.

The Plan terms set forth below exclusively determine the rights of eligible Employees to receive severance benefits upon their termination of employment. Capitalized terms not otherwise defined herein shall have the meaning set forth in Appendix A.

## ARTICLE I.

## ELIGIBILITY FOR SEVERANCE

You shall become a Participant if both of the following requirements are satisfied while the Plan is in effect:

(a)      you are an Employee, and your Employer is withholding federal income and employment taxes from your compensation (absent any exception for withholding for employees on an international assignment with an Employer); and

(b)      you receive notice from your Employer that you have incurred or will incur a Termination of Employment.

1

COMPLAINANT 002163

## ARTICLE II.

### CONDITIONS ON RECEIVING SEVERANCE

**SECTION 2.1   Required Conditions**.  Notwithstanding anything in the Plan to the contrary, you shall be entitled to Severance only in consideration of your complete satisfaction of the following:

(a)     you execute (and do not revoke, if applicable) an agreement and general release (the "Release") in such form acceptable to the Company, subject to any provisions that the Company's General Counsel (or delegate) may amend or add to the Release, in its sole discretion, within the deadline set forth in the Release given to you (as such deadline may be extended in the Plan Administrator's sole discretion) or such longer period as is required by law (the "Release Deadline");

(b)     the Plan Administrator determines in its sole discretion that you have satisfied all of the following transition-related requirements: (i) your having returned all Company property in reasonable condition; (ii) your compliance both before and after your Termination Date with AIG's Code of Conduct and with any obligations related to confidentiality, intellectual property, trade secrets, non-solicitation, non-competition, non-disparagement, cooperation or other employment-related covenants applicable to you; and (iii) your having satisfied all reasonable expectations of the Company with respect to your obligations to the Company regarding, and/or your proper use of its computer systems or other property and facilities, such as, but not limited to, your not compromising, corrupting, misappropriating, or inappropriately sharing, uploading, or downloading data belonging or relating to the Company or any business;

(c)     in the event you have been provided with working notice, you remain in the continuous employ of your Employer until the Termination Date and are not involuntarily terminated by your Employer for Cause prior to the Termination Date; and

(d)     you experience a Termination of Employment.

In any event, you shall not be entitled to any Severance or other benefits under this Plan if you fail to execute and deliver the Release within six (6) months after your Termination Date.

**SECTION 2.2   Failure to Meet Conditions**.  If you fail to execute and deliver the Release by the Release Deadline, if you thereafter effectively revoke the Release, or if you fail to satisfy any condition set forth in paragraph (b) above on and after your Termination Date, AIG shall be under no obligation to make any Severance payments or to provide any further Severance benefits to you pursuant to this Plan, and any such payments and benefits previously provided to you shall not have been earned, as permitted by applicable law.  In such event, the Company may also seek recovery from you pursuant to Section 4.6 below.

## ARTICLE III.

### THE AMOUNT OF SEVERANCE

**SECTION 3.1   Calculation of Basic Amount of Cash Severance**.  Subject to any Plan limitations including those set forth below the "Severance Schedule" that follows, you will receive from your Employer cash Severance in the form of additional Weeks of Pay determined according to the following schedule based on the Plan Administrator's determination of your Years of Service, provided you are eligible for Severance pursuant to Article I and satisfy all conditions set forth in Article II:

2

**Severance Schedule**

| Years of Service | Weeks of Cash Severance Pay if Articles I and II are satisfied |
|---|---|
| Employees at grade 23 or below | Two (2) Weeks of Base Pay for each Year of Service with a minimum of four (4) Weeks of Base Pay and maximum of 52 Weeks of Base Pay |
| Employees at grade 24 and above | Two (2) Weeks of Base Pay for each Year of Service, with a minimum of ten (10) Weeks of Base Pay and a maximum of 52 Weeks of Base Pay |
| Regardless of Years of Service, employees grade 27 or higher | No Severance under the Plan<br><br>Covered under the Executive Severance Plan |

**Notwithstanding the foregoing**: your cash Severance may be less than described above if your benefits are determined according to Appendix B to this Plan (which is applicable to performance-based terminations), and in all cases will be subject (a) to all applicable provisions set forth in Article IV below, and (b) to reduction, but not below zero, by any Offset Amount that the Plan Administrator or your Employer determines to be applicable to you. In addition, your cash Severance may vary from the Severance Schedule above if specifically provided for pursuant to an Appendix to this Plan. In no event will Covered Sales Employees, as defined in Appendix A definition of "Employee," be covered by or be eligible for Severance pursuant to Appendix B. For clarity, Covered Sales Employees who experience performance-managed termination for an Individualized Reason, as defined in Appendix B, will not be entitled to Severance.

    **SECTION 3.2    Effect on STIP Payouts**. If you are eligible for Severance pursuant to Article I and satisfy all conditions set forth in Article II, then your Severance shall, unless otherwise provided in the notification you receive pursuant to Article I above, include an additional short term incentive cash payment that is determined and paid pursuant to the terms and conditions of AIG's Short-Term Incentive Plan ("STIP") applicable to you. For point of clarity, any such STIP payment that you may receive is covered under the AIG Clawback Policy, as in effect from time to time, and may be subject to forfeiture and/or repayment to the extent provided for in such policy.

    **SECTION 3.3    AIG-subsidized Medical Coverage.** If you are eligible for Severance pursuant to Article I and satisfy all conditions set forth in Article II, and you elect to receive your cash Severance pursuant to Section 3.1 as extended time on payroll pursuant to Section 4.2, you are entitled to AIG-subsidized health coverage (based on your coverage in effect immediately before your Termination Date) from your Termination Date until your Severance Period ends. You will then be eligible to elect COBRA benefits in accordance with applicable law. During the Severance Period, you will continue to pay the rates that active employees pay for continued health coverage.

    **SECTION 3.4    Outplacement.** If you are eligible for Severance pursuant to Article I and satisfy all conditions described in Article II, you are also entitled to certain outplacement services, pursuant to AIG's outplacement guidelines. The amount of outplacement services to which you will be entitled will be specified in the Release referenced in Section 2.1(a) above.

    **SECTION 3.5    No Entitlement to Other Similar Benefits**. Except as provided in any of the plans, programs, or agreements described in Section 3.6 below, or as otherwise required by law, if

3

CONFIDENTIAL

COMPLAINANT  002165

you receive any Severance under the Plan, you shall not be entitled to receive any other severance, separation, notice or termination payments on account of your employment with the Company under any other plan, policy, program or agreement. This Plan is not intended to, and shall not, result in any duplication of payments or benefits to you. However, the Plan Administrator may, in its sole and absolute discretion and in unusual and extraordinary circumstances, provide Severance to you in addition to the Severance provided pursuant to Sections 3.1, 3.2, 3.3, and 3.4.

**SECTION 3.6   Participation in Company Benefit Plans and Programs**.   Your participation in all Company benefit plans and programs (including, without limitation, medical and dental coverage, life and accidental death and dismemberment insurance coverage, paid time-off accrual, all retirement and the related excess plans, short term disability, long term disability plans, business travel and accident insurance and rights with respect to any outstanding long term incentive compensation awards or awards under the Top 100 structure) shall be governed by the terms of the applicable plan and program documents, award agreements and certificates. Any decision to commence retirement benefits following your receipt of a notification of Severance eligibility pursuant to Article I shall have no impact on your ability to receive Severance from this Plan.

### ARTICLE IV.

### HOW AND WHEN SEVERANCE WILL BE PAID

Subject to the other terms and conditions of the Plan (including, without limitation, Article III and Section 5.11 regarding Section 409A), cash Severance due under Section 3.1 above shall be paid under the Plan to you upon your Termination of Employment either (a) in a single lump sum pursuant to Section 4.1 below, or (b) as extended time on payroll pursuant to Section 4.2 below; provided that Section 4.2 below shall automatically apply to you if you are not allowed to make an election because of Section 5.11(c). No change to the form of payment can be made once an election is made. Any other benefits will be provided only in a manner that is exempt from Section 409A.

**SECTION 4.1   Lump Sum Payment**.   If you elect to have cash Severance due under Section 3.1 paid to you in a single lump sum, such payment will be made as soon as practicable after your Release becomes final and irrevocable in accordance with Section 2.1.

**SECTION 4.2   Extended Time on Payroll**.   If you elect to have cash Severance due under Section 3.1 to be paid to you as extended time on payroll, such payments shall begin on a regular payroll date that is as soon as administratively practicable after the later of (i) your Release becomes final and irrevocable in accordance with Section 2.1 or (ii) the end of any Non-Working Notice Pay that you may receive, except as may be otherwise required pursuant to an Appendix of this Plan. Such periodic payments shall be made consistent with the Company's normal payroll practices applicable to you immediately prior to your Termination Date (or as such payroll practices may be revised by the Company from time to time), and shall continue for the Severance Period; provided that the first periodic payment that you receive shall include any amounts accrued from the first day of your Severance Period forward.

**SECTION 4.3   Effect of Reemployment and Offer of Comparable Employment**.

(a)      If you are offered Comparable Employment prior to your Termination Date, and you decline such offer, then your right to collect Severance, including any STIP payment pursuant to Section 3.2, will immediately cease and you will forfeit all further rights under this Plan.

(b)      If you are offered any employment with AIG or any subsidiary (including your Employer) prior to your Termination Date, you accept such offer, and there is "gap period" between your Termination Date and the date your new employment commences during which you are not employed by

4

COMPLAINANT  002166

the Company, (i) any Severance payable must be paid as extended time on payroll, (ii) your right to receive cash Severance pursuant to Section 3.1 and AIG-subsidized health coverage pursuant to Section 3.3 will cease as of the day immediately prior to the date such employment commences, and (iii) you will not be entitled to outplacement services pursuant to Section 3.4.  For point of clarity, if any cash Severance is payable to you, you shall be entitled to any STIP payment payable pursuant to Section 3.2 of the Plan.

(c)     If you are offered any employment with AIG or any subsidiary (including your Employer) following your Termination Date, and you decline such offer, you will remain eligible for Severance, including any STIP payment pursuant to Section 3.2.

(d)     If you are offered any employment from AIG or any subsidiary (including your Employer) following your Termination Date, and you accept such offer, (i)  if you are receiving cash Severance due under Section 3.1 as extended time on payroll, then your right to collect further cash Severance  pursuant to Section 3.1, AIG-subsidized health coverage pursuant to Section 3.3, and any further outplacement services pursuant to Section 3.4 will cease as of the day immediately prior to the date such employment commences and you will forfeit all further rights under this Plan; (ii) if you have received cash Severance due under Section 3.1 in a single lump sum, you will be required to repay AIG a pro rata portion of your cash Severance (determined by the ratio of (x) what would have been the remaining term of your Severance Period (the period following the date you commence such employment) if you had elected to have cash Severance due under Section 3.1 paid as extended time on payroll, in full weeks, to (y) your total weeks of payout as determined under the right-hand column of the Severance Schedule within Section 3.1).  For point of clarity, in addition to any cash Severance payable to you, you shall be entitled to any STIP payment payable pursuant to Section 3.2 of the Plan.

**SECTION 4.4    Tax Withholdings**.  The Company will comply with all applicable tax reporting, withholding and other requirements globally with respect to amounts paid under this Plan, in amounts and in a manner determined in its sole discretion. As a condition to the payment of any amount under this Plan, or in connection with any other event related to this Plan, that gives rise to a federal or other governmental tax withholding obligation, the Company may deduct or withhold (or cause to be deducted or withheld) from any payment to you whether or not pursuant to this Plan, in an amount sufficient in the opinion of the Plan Administrator to satisfy such withholding obligation.

**SECTION 4.5    Right to Set-off**.  As permitted by law, AIG has the right to set-off, against its obligation to pay Severance to you, any outstanding amounts (including, without limitation, travel and entertainment or advance account balances, loans, repayment obligations under any awards, or amounts repayable to the Company pursuant to tax equalization, housing, automobile or other employee programs) that you then owe to the Company and any amounts the Plan Administrator otherwise deems appropriate pursuant to any tax equalization policy or agreement.

**SECTION 4.6    Recoupment and Clawback**. Notwithstanding anything to the contrary herein, in consideration of your receipt of any Severance pursuant to the Plan, any Severance payments or benefits that you receive under this Plan will be subject to forfeiture and/or or repayment to the extent the Plan Administrator determines, (a) no later than one year after the last payment of Severance under the Plan, that (i) you violated any conditions set forth in Section 2.1(b), or (ii) grounds existed, on or prior to the date of your termination of employment with the Company for the Company to terminate your employment for Cause or (b)  at any time, that you breached any of the provisions of a Release or revoked it.  Upon such a determination, no further payments or benefits will be due under this Plan, and you will promptly repay AIG any such Severance payments and benefits made, as well as repay AIG both for its direct cost for any benefits provided to you pursuant to the Plan, and for any related collection costs (including reasonable attorneys' fees).

5

# ARTICLE V.

## MISCELLANEOUS PROVISIONS

**SECTION 5.1   Amendment and Termination**.  The Plan may be amended, modified, suspended, or terminated, with or without prior notification of the Participants, at any time in the sole discretion of the highest level human resources executive (the "Senior HR Executive"); provided however that the Vice President Global Compensation and Benefits (or, in the event no individual with such a title is employed by the Company, then the most senior executive overseeing the Company's Compensation and Benefits Function) (the "Senior Compensation and Benefits Executive") has the right to amend the Plan with respect to (i) amendments required by relevant law, regulation or ruling, (ii) amendments that are not expected to have a material financial impact on the Company,  (iii) amendments that can reasonably be characterized as technical or ministerial in nature, or (iv) amendments that have previously been approved in concept by the Senior HR Executive.  Notwithstanding the foregoing delegation, the Senior Compensation and Benefits Executive shall not have the power to make an amendment to the Plan that could reasonably be expected to result in a termination of the Plan, or a change in the structure or the powers, duties or responsibilities of the Senior HR Executive, unless such amendment is approved or ratified by the Senior HR Executive.

**SECTION 5.2   No Additional Rights Created**.  Neither the establishment of this Plan, nor any amendment or modification thereof, nor the payment of any Severance, shall be construed as giving to you (or your beneficiaries), or other person, any additional legal or equitable right against the Company or any officer, director or employee thereof; and in no event shall the terms and conditions of your employment by the Company be modified or in any way affected by this Plan. The provisions of this Plan provide no right or eligibility to you to accrue additional benefits, or to receive any other payouts, from the Company under any other plans, schemes, arrangements or contracts that they may have with you or that you may participate in (including any pension, retirement, profit-sharing, bonus, life insurance, severance or other benefit plan of the Company or any of their subsidiaries).

**SECTION 5.3   Records**. The records of the Company with respect to Years of Service, employment history, base pay, absences, and all other relevant matters shall be conclusive for all purposes of this Plan.

**SECTION 5.4   Governing Law and Construction**.   The respective terms and provisions of the Plan shall be construed, whenever possible, to be in conformity with the requirements of ERISA, and any subsequent laws or amendments thereto.  To the extent not in conflict with the preceding sentence or another provision in the Plan, the construction and administration of the Plan shall be in accordance with the laws of the State of New York applicable to contracts made and to be performed within the State of New York (without reference to its conflicts of law provisions).

**SECTION 5.5   Severability**.  If any of the provisions of this Plan is finally held to be invalid, illegal or unenforceable (whether in whole or in part), such provision will be deemed modified to the extent, but only to the extent, of such invalidity, illegality or unenforceability and the remaining provisions will not be affected thereby; *provided that* if any of such provisions is finally held to be invalid, illegal, or unenforceable because it exceeds the maximum scope determined to be acceptable to permit such provision to be enforceable, such provision will be deemed to be modified to the minimum extent necessary to modify such scope in order to make such provision enforceable hereunder.

6

CONFIDENTIAL

COMPLAINANT  002168

**SECTION 5.6    Incompetency**.  In the event that the Plan Administrator finds that you (or your designated beneficiary) is unable to care for your (or your designated beneficiary's) affairs because of illness or accident, then, unless claim has been made therefore by a duly appointed guardian, committee, or other legal representative, your Severance may be paid in such manner as the Plan Administrator shall determine, and the application thereof shall be a complete discharge of all liability for any Severance payments or benefits to which you (or your designated beneficiary) were (or was) or would have been otherwise entitled under this Plan.

**SECTION 5.7    Death.**  In the event of your death (a) after you execute and deliver a Release, payment of any remaining unpaid Severance shall be made to your estate; and (b) after being offered participation in the Plan, but prior to your executing and delivering a Release, payment of Severance shall be made to your estate, provided that you complied with Section 2.1(b) prior to your death to the extent possible, and your estate executes and delivers a Release.

**SECTION 5.8    No Right of Employment**. Nothing in this Plan will be construed as creating any contract of employment or conferring upon you any right to continue in the employ or other service of the Company, or limit in any way the right of the Company to change your compensation or benefits or to terminate your employment or other service with or without Cause.

**SECTION 5.9    No Funding**.  The benefits payable under this Plan shall be paid solely out of the general assets of AIG and/or your Employer, and you accordingly release all of AIG's subsidiaries, affiliates, business units, joint ventures, and other related entities (other than your Employer) from any and all obligations to provide Severance.  No Company will be under any obligation to fund or set aside amounts to pay obligations under this Plan.  Participants will have no rights to any Severance under this Plan other than as general unsecured creditors of AIG and their Employer.

**SECTION 5.10    Nonassignability**.    No Severance (or any rights and obligations thereunder) payable to any person under the Plan may be sold, exchanged, transferred, assigned, pledged, hypothecated or otherwise disposed of or hedged, in any manner (including through the use of any cash-settled instrument), whether voluntarily or involuntarily and whether by operation of law or otherwise, other than by will or by the laws of descent and distribution, except as may be otherwise provided in the Plan. Any sale, exchange, transfer, assignment, pledge, hypothecation, or other disposition in violation of the provisions of this Section 5.11 will be null and void.  All of the terms and conditions of this Plan and any associated notifications and agreements will be binding upon any permitted successors and assigns.

**SECTION 5.11    Section 409A Provisions**.

(a)    It is intended that all amounts and benefits payable under the Plan constitute either (i) separation pay due to involuntary separation from service that, in the aggregate, does not exceed the lesser of an amount equal to (x) two (2) times your annualized compensation (as determined under Section 409A) and (y) two (2) times the applicable Section 401(a)(17) annual compensation limit for the year in which your "separation from service" within the meaning of Section 409A occurs; or (ii) short-term deferral within the meaning of Section 409A and that consequently the Plan does not provide for any deferral of compensation within the meaning of Section 409A.  The Plan shall be administered and interpreted to give effect to this intention.

(b)    If, notwithstanding paragraph (a) above, any payment or benefit under the Plan is considered to provide for a deferral of compensation subject to Section 409A, then any provision of the Plan that contravenes any regulations or Treasury guidance promulgated under Section 409A or that could cause you to recognize income for United States federal tax purposes in respect of any payment under the Plan prior to the time of payment, or to be subject to any tax or interest under Section 409A, may be

7

COMPLAINANT 002169

modified to maintain, to the maximum extent practicable, the original intent of the applicable provision without the imposition of any tax or interest under Section 409A. Moreover, any discretionary authority that the Plan Administrator may have pursuant to the Plan shall not be applicable to a payment that is subject to Section 409A to the extent such discretionary authority would contravene Section 409A.

(c) If your Severance, plus any other amount or benefit that is payable to you upon your "separation from service" within the meaning of Section 409A under any other plan or arrangement of the Company, is aggregated with any Non Working Notice Pay and any other severance for purposes of Section 409A, and the total exceeds the lesser of (x) two (2) times your annualized compensation (as determined under Section 409A) and (y) two (2) times the applicable Code Section 401(a)(17) annual compensation limit for the year in which your "separation from service" within the meaning of Section 409A occurs and does not qualify as a short-term deferral within the meaning of Section 409A, all of your cash Severance due under Section 3.1 shall be paid to you as extended time on payroll pursuant to Section 4.2. You will NOT be given the ability to elect cash Severance due under Section 3.1 either in the form of a lump sum or payroll continuation.

(d) Notwithstanding anything in the Plan to the contrary, if, at the time of your "separation from service" within the meaning of Section 409A, you are a Participant to whom Section 5.11(c) is applicable, and you are one of the Company's "specified employees" (within the meaning of Code Section 409A(a)(2)(B)(i), determined in accordance with the uniform methodology and procedures adopted by the Company and then in effect), then to the extent that any payments hereunder or under any other plan or arrangement of the Company that is aggregated with your Severance for purposes of Section 409A are considered "deferred compensation" under Section 409A and would otherwise be payable pursuant to the Plan prior to the six-month anniversary of your "separation from service" within the meaning of Section 409A, such payment or payments will be delayed until, and will be made on, the first business day following the six-month anniversary of your "separation from service".

(e) If, under any provision of this Plan, you become entitled to cash Severance due under Section 3.1 as extended time on payroll, then each payment of Severance during the relevant Severance Period shall be considered, and is hereby designated as, a separate payment for purposes of Section 409A (and consequently your entitlement to such Severance payments shall not be considered an entitlement to a single payment of the aggregate amount to be paid during the relevant Severance Period).

(f) Because the timing of the commencement of Severance is contingent upon when you sign a Release, if you are a Participant to whom Section 5.11(c) is applicable, to the extent that the timing and terms of a particular job loss or reduction in force are such that Severance could commence in either of two tax years, your Severance will be required to commence in the later calendar year.

(g) There may be instances where the continuation of medical and dental coverage at the Company rates through the Severance Period will be charged on an after-tax basis. If that is the case, AIG's contribution towards those benefits may be imputed as income to you.

## ARTICLE VI.

## WHAT ELSE YOU NEED TO KNOW
## ABOUT THE PLAN

### SECTION 6.1 Plan Administration

(a) **General.** This Plan will be administered by the Plan Administrator, who keeps records of the Plan and will answer any questions you may have about the Plan. The Plan Administrator's

8

COMPLAINANT 002170

determinations under this Plan (including any Plan interpretations) need not be uniform, and may be made by it selectively with respect to persons who receive, or are eligible to receive, or have received Severance (whether or not such persons are similarly situated). Without limiting the generality of the foregoing, the Plan Administrator will be entitled, among other things, to make non-uniform and selective determinations and interpretations as to the terms and conditions under which you and other Participants collect Severance. All decisions and Plan interpretations made by the Plan Administrator shall be final and binding unless arbitrary and capricious.

(b) **Plan Interpretation**. The Plan Administrator has complete authority, in its sole and absolute discretion, to construe the terms of the Plan (and any related or underlying documents or policies), and to determine the eligibility for, and amount of, benefits due under this Plan to you and your beneficiaries. All such interpretations by the Plan Administrator shall be final and binding upon all parties and persons affected thereby. The Plan Administrator may appoint one or more individuals and delegate such of his powers and duties as it deems desirable to any such individual(s), in which case every reference herein made to the Plan Administrator shall be deemed to mean or include the appointed individual(s) as to matters within their jurisdiction.

(c) **No Liability; Indemnification.** No employee, board member, or other service provider for the Company performing services with respect to the Plan (each, a "*Covered Person*") will have any liability to any person (including you) for any action taken or omitted to be taken or any determination made, in each case, in good faith with respect to this Plan or your participation in it. Each Covered Person will be indemnified and held harmless by the Company against and from any loss, cost, liability, or expense (including attorneys' fees) that may be imposed upon or incurred by such Covered Person in connection with or resulting from any action, suit or proceeding to which such Covered Person may be a party or in which such Covered Person may be involved by reason of any action taken or omitted to be taken under this Plan and against and from any and all amounts paid by such Covered Person, with the Senior HR Executive's approval, in settlement thereof, or paid by such Covered Person in satisfaction of any judgment in any such action, suit or proceeding against such Covered Person, *provided that* AIG will have the right, at its own expense, to assume and defend any such action, suit or proceeding and, once AIG gives notice of its intent to assume the defense, AIG will have sole control over such defense with counsel of its choice. To the extent any taxable expense reimbursement under this paragraph is subject to Section 409A, (i) the amount thereof eligible in one taxable year shall not affect the amount eligible in any other taxable year; (ii) in no event shall any expenses be reimbursed after the last day of the taxable year following the taxable year in which the Covered Person incurred such expenses; and (iii) in no event shall any right to reimbursement be subject to liquidation or exchange for another benefit. The foregoing right of indemnification will not be available to a Covered Person to the extent that a court of competent jurisdiction in a final judgment or other final adjudication, in either case, not subject to further appeal, determines that the acts or omissions of such Covered Person giving rise to the indemnification claim resulted from such Covered Person's bad faith, fraud or willful misconduct. The foregoing right of indemnification will not be exclusive of any other rights of indemnification to which Covered Persons may be entitled under the Amended and Restated Certificate of Incorporation or Bylaws of American International Group, Inc., as a matter of law, or otherwise, or any other power that the Company may have to indemnify such persons or hold them harmless.

**SECTION 6.2   Claims And Appeal Procedure**. You may only make a written claim for Severance anytime within one (1) year after your Termination Date, in which case the Plan Administrator shall have the exclusive right to decide your claim, to interpret the Plan (if needed), and to decide any and all matters arising thereunder. All decisions and Plan interpretations made by the Plan Administrator shall be final and binding on all parties, unless arbitrary and capricious.

9

COMPLAINANT 002171

(a)    **Claim for Benefits**. Claims as to the amount of any distribution or method of payment under the Plan must be submitted in writing to the Plan Administrator. The Plan Administrator shall notify you of its decision by written or electronic notice, in a manner intended to be understood by you. The notice shall set forth:

(1)    the specific reasons for the denial of the claim;

(2)    a reference to specific provisions of the Plan on which the denial is based;

(3)    a description of any additional material or information necessary to perfect the claim and an explanation of why such material or information is necessary; and

(4)    an explanation of the Plan's claims review procedure for the denied or partially denied claim and any applicable time limits, and a statement that you have a right to bring a civil action under Section 502(a) of ERISA following an adverse benefit determination on review.

Such notification shall be given within 90 days after the claim is received by the Plan Administrator (or within 180 days, if special circumstances require an extension of time for processing the claim, and provided written notice of such extension and circumstances and the date a decision is expected is given to you within the initial 90-day period). The time period begins when the claim is filed, regardless of whether the Plan has all of the information necessary to decide the claim at the time of filing. A claim is considered approved only if its approval is communicated in writing to you.

(b)    **Review or Denial of Claim**. Upon denial of a claim in whole or in part, you shall have the right to submit a written request to the Appeal Claim Administrator for a full and fair review of the denied claim. A request for review of a claim must be submitted within 60 days of your receipt of written notice of the denial of the claim. If you fail to file a request for review within 60 days of the denial notification, the claim will be deemed abandoned and you are precluded from reasserting it. Also, if you are not provided a notice of denial, you may submit a written request for review to the Appeal Claim Administrator.

You shall have, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim for benefits. You may submit written comments, documents, records, and other information relating to the claim for benefits. The review shall take into account all comments, documents, records, and other information submitted by you relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination. Failure to raise issues or present evidence on review will preclude those issues or evidence from being presented in any subsequent proceeding or judicial review of the claim.

(c)    **Decision by the Appeal Claim Administrator**. The Appeal Claim Administrator will advise you of the results of the review within 60 days after receipt of the written request for review (or within 120 days if special circumstances require an extension of time for processing the request, and if notice of such extension and circumstances is given to you within the initial 60 day period).

The decision on review shall be in written or electronic form, in a manner calculated to be understood by you. If your appeal is denied in whole or in part, the decision shall set forth:

(1)    the specific reasons for the denial of the appeal of the claim;

10

(2)     the specific reference to pertinent provisions of the Plan on which the denial is based;

(3)     a statement that you are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to you claim for benefits;

(4)     a statement describing any voluntary appeal procedures offered by the Plan (if any) and your right to obtain the information about such procedures and a statement of your right to bring an action under Section 502(a) of ERISA.

To the extent of its responsibility to review the denial of benefit claims, the Appeal Claim Administrator shall have full authority to interpret and apply in its discretion the provisions of the Plan. The Appeal Claim Administrator may request a meeting to clarify any matters deemed appropriate.

You, any beneficiary, or other individual alleging a violation of or seeking any remedy under any provision of ERISA shall also be subject to the claims procedure described in this Article VI. **Any such claim shall be filed within one (1) year after your Termination Date or it shall be deemed waived and abandoned.** Also, any suit or legal action will be subject to a one (1) year limitation period, measured from your Termination Date and tolled during the period that any claim is pending under the claims procedures of this Article VI.

(d)    **Jurisdiction**. **You and AIG hereby irrevocably submit to the exclusive jurisdiction of a federal court of appropriate jurisdiction located in the Borough of Manhattan, the City of New York over any suit, action or proceeding arising out of or relating to a claim for Severance or other benefits under this Plan**. You and AIG acknowledge that the forum designated by this section has a reasonable relation to this Plan and to your relationship with AIG, that the agreement as to forum is independent of the law that may be applied in the action, suit or proceeding and that such forum shall apply even if the forum may under applicable law choose to apply non-forum law. For point of clarity, this Section 6.2(d) shall not apply to a claim under Section 510 of ERISA, to the extent you are a participant in an Employer or Company-based Employment Dispute Resolution Program.

(e)    **Waiver**. You and AIG waive, to the fullest extent permitted by applicable law, any objection which you or AIG now or hereafter may have to personal jurisdiction or to the laying of venue of any such suit, action or proceeding in any court referred to in Section 6.1(d). You and AIG undertake not to commence any action, suit or proceeding arising out of or relating to or concerning this Plan or any Award in any forum other than a forum described in Section 6.1(d). Notwithstanding the foregoing, nothing herein shall preclude AIG from bringing any action, suit or proceeding in any other court for the purpose of enforcing the provisions of this Section 6.1. You and AIG agree that, to the fullest extent permitted by applicable law, a final and non-appealable judgment in any such suit, action or proceeding in any such court shall be conclusive and binding upon you and AIG.

(f)    **Confidentiality**. You must keep confidential any information concerning any Severance made under this Plan and any dispute, controversy or claim relating to this Plan, except that you may disclose information concerning a dispute or claim when required to do so by a court of competent jurisdiction, by any regulatory or governmental agency, or by any administrative body or legislative body (including a committee thereof) with jurisdiction to order the Employee to divulge, disclose or make accessible such information, or as otherwise required by law or to your immediate family, attorneys or tax advisors, (provided that such parties agree not to disclose any such information other than as necessary pursuant to the conditions noted above).

11

CONFIDENTIAL

COMPLAINANT  002173

**SECTION 6.3   Your Rights Under ERISA**.   You are entitled to certain rights and protections under ERISA.  ERISA provides that you shall be entitled to:

- Examine, without charge, at the Plan Administrator's office and at other specified locations, such as work sites, all Plan documents, and copies of all documents filed by the Plan with the U.S. Department of Labor, such as detailed annual reports (Form 5500) and Plan descriptions.  These documents are also available to view at the Public Disclosure Room of the Employee Benefits Security Administration.

- Obtain copies of Plan documents and other Plan information upon written request to the Plan Administrator.  The Plan Administrator may make a reasonable charge for the copies.

- Receive a summary of the Plan's annual financial report.  The Plan Administrator is required by law to furnish each Participant with a copy of this summary annual report.

In addition to creating rights for you, ERISA imposes duties upon the people who are responsible for the operation of the Plan.  The people who operate the Plan are called "fiduciaries" of the Plan.  They have a duty to do so prudently and in the interest of you and beneficiaries.  No one, including AIG, your Employer, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a Plan benefit or exercising your rights under ERISA.  If your claim for a Plan benefit is denied in whole or in part, you must receive a written explanation of the reason for the denial.  You have the right to have the Plan review and reconsider your claim.  Under ERISA, there are steps you can take to enforce the above rights.

For instance, if you request materials from the Plan and do not receive them within 30 days of the receipt of your request, you may file suit in a federal court.  In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until such Participant receives the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator.  If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court.

If you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or may file suit in a federal court.  The court will decide who should pay court costs and legal fees.  If you are successful, the court may order the person you have sued to pay these costs and fees.  If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

If you have any questions about the Plan, you should contact the Plan Administrator.  If you have any questions about this statement or about your rights under ERISA, you should contact the nearest Area Office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in the appropriate telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210.  A Participant may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

**SECTION 6.4   Plan Document**.   In accordance with ERISA, this document shall constitute both the Plan document and summary plan description and shall be distributed to you in this form. This Plan shall solely and exclusively control and determine your right to Severance, and supersedes all prior agreements, promises, covenants, arrangements, communications, representations and warranties between you and the Company, whether written or oral, with respect to the subject matter hereof.

12

COMPLAINANT 002174

**SECTION 6.5** **No Third Party Beneficiaries**. Except as expressly provided herein, this Plan will not confer on any person other than the Company and each Participant any rights or remedies hereunder. The exculpation and indemnification provisions of Section 6.1(c) will inure to the benefit of a Covered Person's estate and beneficiaries and legatees.

**SECTION 6.6** **Successor Entity; AIG Assigns**. Except as otherwise determined by the Plan Administrator, in the event of a merger, consolidation, mandatory share exchange or other similar business combination of AIG with or into any other entity ("*Successor Entity*") or any transaction in which another person or entity acquires all of the issued and outstanding common stock of AIG, or all or substantially all of the assets of the Company, the terms of this Plan will be binding and inure to the benefit of AIG, and its successors and assigns.

**SECTION 6.7** **Other Important Facts**.

| | |
|---|---|
| OFFICIAL NAME OF THE PLAN: | American International Group, Inc. Severance Plan |
| SPONSOR: | American International Group, Inc.<br> Attention: Senior Human Resources Executive<br>175 Water St.<br>New York, New York 10038 |
| EMPLOYER IDENTIFICATION NUMBER (EIN): | 13-2592361 |
| PLAN NUMBER: | 526 |
| TYPE OF PLAN: | Severance |
| END OF PLAN YEAR: | December 31 |
| TYPE OF ADMINISTRATION: | Self-administered |
| PLAN ADMINISTRATOR: | AIG, Inc. Severance Plan Administrator<br>American International Group, Inc.<br>    Attention: Vice President Global Compensation &<br>    Benefits (or his successor)<br>175 Water St.<br>New York, New York 10038 |
| APPEAL CLAIM ADMINISTRATOR: | Severance Appeals Committee<br>American International Group, Inc.<br>    Attention: Vice President Global Compensation &<br>    Benefits (or his successor)<br>175 Water St.<br>New York, New York 10038 |
| AGENT FOR SERVICE OF LEGAL PROCESS: | General Counsel<br>American International Group, Inc. |

13

CONFIDENTIAL

COMPLAINANT 002175

80 Pine St., 13th Floor
New York, New York 10005
*(Service of legal process may also be made upon the Plan Administrator.)*

EFFECTIVE DATE OF PLAN:          October 1, 2013

SOURCE OF CONTRIBUTIONS:         AIG-paid

14

CONFIDENTIAL                                    COMPLAINANT  002176

# AMERICAN INTERNATIONAL GROUP, INC.

## SEVERANCE PLAN

### Appendix A

---

### Defined Terms and Interpretations

---

The following definitions and interpretations of important terms apply to the Plan.

**Appeal Claim Administrator.**  The Severance Appeals Committee.

**Cause -** means (1) your conviction, whether following trial or by plea of guilty or *nolo contendere* (or similar plea), in a criminal proceeding (A) on a misdemeanor charge involving fraud, false statements or misleading omissions, wrongful taking, embezzlement, bribery, forgery, counterfeiting or extortion, or (B) on a felony charge or (C) on an equivalent charge to those in clauses (A) and (B) in jurisdictions which do not use those designations; (2) your engagement in any conduct which constitutes an employment disqualification under applicable law (including statutory disqualification as defined under the Securities Exchange Act of 1934, as amended); (3) your violation of any securities or commodities laws, any rules or regulations issued pursuant to such laws, or the rules and regulations of any securities or commodities exchange or association of which the Company or any of its subsidiaries or affiliates is a member; or (4) your material violation of the Company's codes of conduct or any other Company policy as in effect from time to time.  The Determination as to whether Cause has occurred shall be made by the Plan Administrator in its sole discretion.  The Plan Administrator shall also have the authority in its sole discretion to waive the consequences of the existence or occurrence of any of the events, acts or omissions constituting Cause.

**Code.**  The Internal Revenue Code of 1986, as amended, and the rules, regulations and guidance promulgated thereunder.

**Comparable Employment.**  An ongoing position with AIG or any subsidiary (including your Employer) with the same or similar responsibilities at a reasonably similar rate of base compensation, determined as of your Termination Date, within a reasonably similar geographic location.  The Employee Relations Department shall have the sole and absolute discretion to determine the specific definition of Comparable Employment that shall apply to Employees and whether a specific position is Comparable Employment. This shall not include a temporary assignment.

**Company.**  American International Group, Inc. and each of its consolidated U.S. domestic subsidiaries or affiliates (other than those subsidiaries and affiliates that are specifically excluded by a written agreement incorporated into the Plan).

**Effective Date.**  The Plan became effective October 1, 2013.

**Employee.**  Any active regular full or Part -time U.S. employee of the Company (including U.S. citizens working outside the United States who have been designated as mobile overseas personnel) *other than* any employee whom the Company categorizes or treats as (1) being temporary (whether or not such treatment is correct); (2) being covered under AIG's Executive Severance Plan; (3) a nonresident alien for federal tax purposes (whether or not such treatment is correct); (4) covered by a collective bargaining agreement; (5) eligible for severance under any offer letter, separate contract, or severance plan; (6)

CONFIDENTIAL

COMPLAINANT  002177

ineligible because designated at the time of hire as not eligible to participate in the Plan; (7) an employee whose compensation is comprised of or includes payments from a program that provides for commissions earned upon such employee's direct sale of a product or service to a customer and who receives a percent of the price of the product or service for such sale; (8) service agents of AIG Financial Network who, on or about January 11, 2016, had their compensation plans changed to receive fixed weekly pay in lieu of collections commissions; or (9) an employee whose compensation is comprised of or includes payments from a program that provides for a sales incentive that is not covered or paid through the STIP (a "Sales Incentive Plan"), unless the sponsor of such Sales Incentive Plan specifically provides in writing for Severance to be provided under this Plan ("Covered Sales Employees") and provides for a definition of Week of Base Pay for purposes of this Plan.  In such event, clause (ii) of the definition in this Plan of Week of Base Pay applicable to Covered Sales Employees shall apply and Section 3.2 of the Plan shall not apply to such Covered Sales Employees. In addition, Employee shall not include an Excluded Individual.

**Employer.**  The entity that employs you.

**ERISA.**  The Employee Retirement Income Security Act of 1974, as amended.

**Excluded Individual.**  Excluded Individual shall mean any individual who is treated or designated by the Company as an independent contractor, as an individual who is employed by an employment agency not affiliated with the Company, as a leased employee, or as a consultant (regardless, in all cases, of whether such treatment or designation is subsequently upheld by a court, judicial or arbitral authority or any other governmental agency).  Excluded Individuals are not eligible to participate in or receive benefits under the Plan.

**Non Working Notice Pay.**  Separately from this Plan, a Participant may receive Non Working Notice Pay that is paid in the form of extended time on payroll.  Your Employer's business unit may also give you additional working notice as deemed appropriate.

**Offset Amount.**  If (1) you are (A) eligible for Severance and receive notice under The Worker Adjustment and Retraining Notification Act or any state or local equivalent ("WARN"), and (B) at the Company's discretion, directed not to work during any period of the WARN notice requirement, or (2) you receive Non Working Notice Pay and benefits pursuant to WARN that is not subject to the provisions of this Plan for a period following your Termination Date, then your cash Severance granted under this Plan will be reduced by one (1) week of your base pay immediately prior to your Termination Date for each full week of WARN notice required, or for each full week of Non Working Notice Pay pursuant to WARN that you receive, as applicable, but in no event shall your cash Severance be reduced to less than two weeks of Severance.  This reduction is the Offset Amount.

**Part-time.**  Refers to those Employees who are not regularly scheduled to work full-time, but whose regularly scheduled hours are 28 hours per week or more. For point of clarity, any employee classified as a temporary employee who is paid on an hourly basis and not eligible to participant in the Company's other benefit programs will not be considered to be a Part-time Employee.

**Participant.**  An Employee who meets the requirements for eligibility under the Plan, as set forth in Article II of the Plan.

**Plan.**  This American International Group, Inc. Severance Plan, as now in effect.

**Plan Administrator.**  The individual who holds the position of the Company's most senior compensation and benefits executive.

CONFIDENTIAL

COMPLAINANT  002178

**Section 409A.** Section 409A of the Code, including any amendments or successor provisions to that section, and any regulations and other administrative guidance.

**Severance.** The severance benefits to which a Participant is entitled pursuant to sections 3.1, 3.2, 3.3 and 3.4 of Article III.

**Severance Appeals Committee.** A committee consisting of three senior human resources executives, one from each of the following business segments of the Company; (1) Consumer, (2) Commercial, and (3) Corporate, each of whom is appointed by the most senior human resources executive of each such segment.

**Severance Period.** As applicable to you, the period 1) beginning (A) if you receive Non- Working Notice Pay, the day following the last day for which you receive Non Working Notice Pay, and (B) if you do not receive Non-Working Notice Pay, your Termination Date, and 2) ending on the last day of the total number of Weeks of Pay for which you are entitled to payment pursuant to Section 3.1 of the Plan, subject to the terms and conditions of the Plan.  For point of clarity, if you receive cash Severance in the form of a lump sum pursuant to Section 4.1, no Severance Period shall be applicable to you.

**STIP.** AIG, Inc.'s Short-Term Incentive Plan that is in effect for the year applicable to determination of your Severance.

**Termination Date.** Your last day of status as an active Employee, as determined by the Plan Administrator in its sole discretion.

**Termination of Employment.** As determined by the Plan Administrator in its sole discretion, the cessation of your employment relationship with the Company due to (1) a reduction in force; (2) elimination of a job; (3) office closing; (4) immediate return from a Company approved leave of absence, including a legally-protected leave of absence, when no Comparable Employment is available; (5) a material restructuring of the fundamental nature, scope, and complexity of your position that requires, (A) materially different skills, licenses, or requirements that were not necessary for success in your position prior to the restructuring, (B) your cessation of employment to occur within one year after the restructuring began, for failure to perform at acceptable levels in the restructured position; and (C) your failure to perform your duties in the restructured position at an acceptable level to have resulted from your not having the necessary skills or requirements for the restructured position, or (6) termination for a reason set forth in Appendix B.

Without limiting the foregoing, Termination of Employment does *not* include the termination by AIG or your Employer of your employment relationship with the Company under any of the following circumstances:

  i.  for Cause;

  ii.  your voluntary resignation or job abandonment;

  iii.  your death before being offered the opportunity to participate in the Plan pursuant to Article I;

  iv.  your work in a business (or the portion of such business) of the Company (i) which is sold in whole or in part to another corporation or company, whether by sale of stock or assets, (ii) which is merged or consolidated with another corporation or company or is part of a similar corporate transaction or (iii) which is outsourced to another corporation or company, and (x) you are offered Comparable Employment with the purchaser, or the surviving business of the merger,

17

COMPLAINANT  002179

consolidation or similar transaction or the corporation or company to which the business is outsourced, as applicable (whether or not you accept any such position with the purchaser, surviving business or other company), (y) you continue working immediately after the applicable transaction without interruption in Comparable Employment with the purchaser, the surviving business of the merger, consolidation or similar transaction or the corporation or company to which the business is outsourced, as applicable, or (z) you are offered and accept an offer of employment from the purchaser, the surviving business of the merger, consolidation or similar transaction or the corporation or company to which the business is outsourced, as applicable, that does not constitute Comparable Employment; or

v.   An indefinite or temporary layoff or reduction in force does not constitute a Termination of Employment unless and until the layoff or reduction in force becomes permanent. The determination as to whether a layoff or reduction in force is permanent shall be made by any Company in its sole and absolute discretion, and such determination shall be final and binding on all affected Employees.

**Week of Base Pay.** (i) Your weekly base salary at the time of your Termination of Employment, as reflected on the Company's payroll records, ***excluding*** bonuses, overtime pay, incentive or deferred compensation or other additional compensation; or (ii) with respect to Covered Sales Employees, the definition of Week of Base Pay for severance purposes set forth in the applicable Sales Incentive Plan. For purposes hereof, your Week of Base Pay shall include any salary reduction contributions made on your behalf to any plan of the Company under Section 401(k) (or under any non-qualified plan designed to mirror any such tax-qualified plan) or Section 125 of the Code.

**Years of Service.** Years of Service shall be measured and credited only in full (whole) years based on the number of consecutive twelve (12) month periods of your employment with the Company since your last date of hire (or, if without break in service, any prior employer if provided for under an acquisition agreement and the Company's current service records), in which you are paid by the Company (or such prior company) for the performance of full-time and Part-time services. A Year of Service is earned for service for six (6) months or more of employment within the final year of your employment. Time off for the Family Medical Leave Act leaves, approved leaves of absence with pay, approved leaves covered by Short Term Disability (but not by Long Term Disability), and military leave in the U.S. Armed Forces will be counted toward service for calculation of Severance. Your Severance Period is not part of your credited service for calculation of Years of Service; provided, however, any period during which you receive Non Working Notice Pay that is pursuant to WARN will be included in the calculation of your Years of Service.

Notwithstanding the foregoing, a break in service of less than six (6) months shall not result in periods of employment before and after such break being deemed to be non-consecutive and the resumption of employment after such break shall not be considered a new date of hire for purposes hereof. If you previously received severance for prior years of service and were rehired, you will not receive additional severance for the period of time prior to the rehire date.

18

COMPLAINANT  002180

**Appendix B**

**Performance Managed Termination Process**

---

**B-1.     You will receive Severance, in an amount equal to fifty percent (50%) of the cash Severance amount determined pursuant to Section 3.1 of the Plan, and fifty percent (50%) of the STIP payment  payable pursuant to Section 3.2 of the Plan, if –**

- you meet the eligibility requirements in Article I of the Plan,

- you satisfy the conditions in Article II of the Plan, and

- your Employer determines that your Termination of Employment is due to an Individualized Reason as defined below.

With respect to the STIP payment equal to fifty percent (50%) of the amount payable pursuant to Section 3.2 of the Plan discussed above, an Individualized Reason shall be deemed to be a "position elimination" for purposes of the STIP.  You will also be entitled to the benefits provided under Section 3.3 of the Plan. In addition, you will be entitled to certain outplacement services, pursuant to AIG's outplacement guidelines. The amount of outplacement services to which you will be entitled will be specified in the Release described in Section 2.1(a) above.  Notwithstanding Section 4.3 of the Plan, the Release that you will be required to sign pursuant to Section 2.1(a) will require that you waive any claim to reinstatement or re-employment with the Company and agree not to bring any claim based upon the failure or refusal of the Company to employ you after your Termination of Employment.  For point of clarity, Covered Sales Employees are not eligible to receive Severance pursuant to this Appendix B.

**B-2.     "Individualized Reason"**

Your Termination of Employment shall be considered to be for an "Individualized Reason" if your Employer determines that your employment with the Company has terminated after the occurrence of the following; (i) first, your being informed that you are underperforming (as explained in more detail in B-3 below), (ii) second, a period during which you are subject to active performance management to resolve the performance issues, that may include you being provided a targeted improvement plan, or a formal written performance warning, (iii) third, during such period you made a good faith, diligent effort to improve your performance and (iv) fourth, it was determined that the underperformance issues were not resolved.

For the avoidance of doubt and unless protected under applicable law, a Termination of Employment due to excessive absenteeism shall not constitute an Individualized Reason, and thus an individual terminated for such reason would not be eligible for any Severance or any other payments or benefits under this Plan.

**B-3.     Underperformance**

Whether or not the termination of your employment qualifies as being a Termination of Employment resulting from underperformance depends upon whether, after evaluating your performance, your Employer determines, in its sole discretion, that your work was not performed at a satisfactory level, evidenced by factors that may include (without limitation) the following:

- Failure to perform the duties of the stated position or to perform them to the required standard;

19

- Low productivity or a lower output of work than is expected of the job or relative to peer group;

- Inadequate skills or knowledge of the assigned role; or

- Inability to apply relevant skills and knowledge in the workplace.

CONFIDENTIAL

COMPLAINANT  002182

## AMERICAN INTERNATIONAL GROUP INC.

### SEVERANCE PLAN

Appendix C

ILFC Severance Schedule

C-1.    If you are an Employee who works for International Lease Finance Corporation ("ILFC") or its subsidiaries ("ILFC Employees"), effective as of April 1, 2014, the following terms will apply to you.

C-2.    In lieu of receiving cash Severance pursuant to the "Severance Schedule" set forth in Section 3.1 of the Plan, your cash Severance will be determined according to the following schedule based on the Plan Administrator's determination of your Years of Service, provided you meet the eligibility requirements for Severance in Article I of the Plan and satisfy the conditions set forth in Article II of the Plan:

**Severance Schedule**

|  | Weeks of Base Pay if Articles I and II are satisfied |
|---|---|
| All ILFC Employees, except those eligible for the American International Group Inc. Executive Severance Plan for International Lease Finance Corporation ("ILFC Executive Severance Plan") | Four (4) Weeks of Base Pay for each Year of Service, with a minimum of 12 weeks and a maximum of 52 Weeks of Base Pay |
| Employees eligible for the ILFC Executive Severance Plan | No Severance under the Plan<br><br>Covered under the ILFC Executive Severance Plan |

C-2.    This Appendix C will remain in effect and applicable to ILFC Employees effective April 1, 2014 and will continue through the close of business on the first anniversary of the Completion Date, as defined in the Share Purchase Agreement between AerCap Holdings N.V., AerCap Ireland Limited, American International Group, Inc. and AIG Capital Corporation, dated as of December 16, 2013 (generally the date that the sale of ILFC and the purchase of the shares of ILFC takes place); provided, however, in the event that the Share Purchase Agreement is terminated prior to the Completion Date, this Appendix C will become null and void as of the date of such termination.

C-3.    The Plan's definition of "Termination of Employment" will be modified with respect to ILFC Employees by adding the following after the first sentence: Provided, however, that, clause (ii) therein notwithstanding, a Termination of Employment will include an ILFC Employee's resignation due to ILFC requiring that the ILFC Employee relocate to a location that will be such ILFC

21

CONFIDENTIAL

COMPLAINANT 002183

Employee's principal site of employment and is more than 50 miles from the ILFC Employee's principal site of employment as of the Completion Date (such resignation, a "Relocation Resignation"), but only if such Relocation Resignation occurs (i) on or after the Completion Date and (ii) prior to such required relocation actually occurring, provided, however, that this clause (ii) will not apply if ILFC requires the ILFC Employee to relocate prior to the expiration of the Cure Period (as defined below); provided, further, that a Relocation Resignation will not be a Termination of Employment until and unless the ILFC Employee has given the Board of Directors of ILFC written notice of the applicable event within 30 days of the date the ILFC Employee has actual knowledge of such event and ILFC has not cured the alleged cause of such Relocation Resignation within 30 days of receiving such notice (such period, the "Cure Period").

22

COMPLAINANT 002184

**AMERICAN INTERNATIONAL GROUP INC.**

**SEVERANCE PLAN**

Appendix D

Restructuring Window Period Schedule

D-1.     If you are an Employee at grade 24 through 26, or an Employee who received an award in 2015 under the American International Group, Inc. 2013 Long Term Incentive Plan (a "2015 LTIP Award"), who has a Termination Date (other than one resulting from a performance-based termination pursuant to Appendix B) during the period commencing on September 1, 2015 and ending on March 31, 2016, and provided you meet the eligibility requirements for Severance in Article I of the Plan and satisfy the conditions set forth in Article II of the Plan, you shall be entitled to the Restructuring Enhanced Severance Payment set forth below.

D-2.     Your Restructuring Enhanced Severance Payment will be equal to 100% of your 2015 LTIP Award target in effect at your Termination Date and will be paid as soon as administratively possible after the date you execute the Release and any revocation period associated with the Release expires, but in no event later than March 15th following the year in which the Termination Date occurs.  For purposes of the Plan, the Restructuring Enhanced Payment will be considered Severance.

D-3.     This Appendix D will remain in effect during the Restructuring Window Period and immediately upon the close of the Restructuring Window Period will become null and void. For purposes of this Appendix D, the term "Restructuring Window Period" means the period of time commencing on September 1, 2015 and ending on June 30, 2016.

D-4.     The Plan's definition of "Termination of Employment" will be modified with respect to any Employee whose Terminate Date is during the Restructuring Window Period by adding the following clause (7) at the end of such definition: (7) an involuntary termination by the Company without Cause during the Restructuring Window Period (regardless of whether such termination is the result of a reduction-in-force or job elimination).

D-5     With respect to Employees whose Termination Date is on or after September 1, 2015 through September 30, 2015,  the following clause is added at the end of the first sentence of Section 3.2 Effect on STIP Payouts, of the Plan; "provided, however, for the period commencing on September 1, 2015 through September 30, 2015, for purposes of this Section 3.2, the amount of your STIP payout determined under the Termination Without Cause section of Appendix B of the STIP will be calculated based on 100% of your individual target incentive award under the STIP (not 80%).  For point of clarity, the Termination without Cause pro ration clause in the STIP still applies during this period."

23

COMPLAINANT 002185

**AMERICAN INTERNATIONAL GROUP INC.**

**SEVERANCE PLAN**

Appendix E

**March 31, 2016 Special Severance Payment**

E-1.    If you are an Employee covered by Appendix D who has a Termination Date (other than one resulting from a performance-based termination pursuant to Appendix B) of March 31, 2016, provided you meet the eligibility requirements for Severance in Article I of the Plan and satisfy the conditions set forth in Article II of the Plan, in addition to receiving the payments provided pursuant to the Plan including Appendix D, notwithstanding any language to the contrary in Section 3.2 or the STIP, pursuant to this Appendix E you will also receive an amount equal to 25% of your most recent individual  STIP target incentive award under the STIP (the "March 31 Special Severance Payment").

E-2.    The March 31 Special Severance Payment will paid in a lump sum as soon as administratively possible after the date you execute the Release and any revocation period associated with the Release expires, but in no event later than March 15, 2017.

24

CONFIDENTIAL

COMPLAINANT  002186



**ACKNOWLEDGMENT**

I hereby confirm that I have not taken or have returned and do not currently possess any confidential or proprietary information or trade secrets (collectively, "confidential information") of American International Group, Inc. and/or any of its worldwide subsidiaries and/or affiliates (collectively, "AIG"), whether in written, electronic or other form.

I further confirm that I have not disclosed to any non-AIG employee, other than in the ordinary course of conducting AIG's business, any of AIG's confidential information, whether in written, electronic or other form.

I acknowledge that I have a continuing obligation to not use or disclose any confidential information of AIG, whether in written, electronic or other form, and I agree to respect and maintain the confidentiality of AIG's confidential information.

_____

**Signature**

_____

**Print Name**

_____

**Employee ID Number**

_____

**Date**

\*\*Once executed by the employee, this form should be returned to AIG HR Shared Services at 2727 Allen Parkway, W2-00 Houston, TX 77019 or HRsharedservices@aig.com.

Revised 10/2015