UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
AARON KATZEL,

                Plaintiff,

-against-

                                              **Case No. 20-cv-07220 (AKH)**

AMERICAN INTERNATIONAL GROUP, INC.,
                                              <u>DECLARATION</u>

                Defendant.

-------------------------------------------------------X

STATE OF NEW YORK   )
                                )   ss.:
COUNTY OF NEW YORK  )

       Aaron J. Katzel, hereby states and avers under penalties of perjury that:

       1.      I am the Plaintiff in the above-captioned action. I am submitting this Declaration in support of my opposition to Defendant's Motion for Summary Judgment.

       2.      Specifically, I submit this Declaration to place before the Court certain information relevant to the Court's consideration of Defendants' Motion for Summary Judgment. I submit that these materials, together with the information and materials set forth by Mr. Brickman's Declaration ("Brickman Decl."), Plaintiff's Response to Defendant's Local Civil Rule 56.1 Statement of Undisputed Material Facts and Plaintiff's Counter Statement of Undisputed Material Facts ("CSOF"), and Plaintiff's Memorandum of Law in Opposition to Summary Judgment warrant this Court's denial of Defendants' motion.

       3.      I began my legal career as a transactional lawyer, practicing for nine years in New York, Frankfurt and Paris with the law firms Willkie Far & Gallagher LLP and Sullivan &

Cromwell LLP. My legal practice between 2000 and 2006 principally focused on mergers and acquisitions and private equity and restructuring transactions.

4. I joined AIG in 2006 as Associate General Counsel for the Financial Services Division. While working for AIG's Financial Services Division I was promoted to Deputy General Counsel. My roles as in-house counsel at AIG between 2006 and 2011 principally focused on general corporate and commercial law, commercial and consumer finance, disputes, mergers and acquisitions and compliance matters.

5. I was promoted four times during my employment at AIG. In each year of my employment at AIG, I was awarded increases to my overall compensation package.

6. Pursuant to the implementation of the Project Kalahari carve-out process, AIG executive leadership authorized engagement of external counsel Norton Rose Fulbright LLP to represent The Legal Operations Company LLC ("TLOC") and its proposed management team, on the one hand, and Kramer Levin Naftalis & Frankel LLP to represent AIG as a shareholder, potential investor, and potential customer, on the other, in the negotiation of the terms of a carve-out transaction and arm's length agreement.

7. Under my leadership of the LOC at AIG, I and other members of the LOC's leadership team regularly received feedback on the LOC's operations and performance from representatives of significant internal clients of the LOC, who participated in an internal steering committee constituted to oversee the operations of the LOC (the "Steering Committee").

8. The Steering Committee received regular updates on the LOC's activities and performance, expressed its views on desired enhancements to the LOC's services or operations, and followed the progress of such enhancements through regular Steering Committee meetings and reports.

9. AIG did not disclose to me the existence of an alleged "scanned hard copy" of the results of the client survey conducted by the Corporate Development team in connection with Project Kalahari until after my termination from AIG and following my commencement of an OSHA proceeding against AIG.

10. The March 2016 Accenture "back of the envelope" analysis was developed without the involvement of, and was never validated by, any representatives of the LOC or, to the best of my knowledge and belief, the users of its services. Further, to the best of my knowledge and belief it was not disclosed to any representatives of the LOC or to AIG's Chief Legal Officer that the Accenture analysis was performed until nearly 7 months after it had been prepared.

11. AIG's Internal Investigations Group never communicated with me regarding any of the concerns I raised in connection with the Corruption Risk Questionnaire I submitted to AIG's Compliance Department in 2016. Notwithstanding the requirements of AIG's policies, AIG has never produced evidence that my concerns regarding fraud-related risks in connection with Project Kalahari were presented to the Internal Investigations Group or the Audit Committee of AIG's Board of Directors.

12. Neither the selective excerpts cited in Paragraph 32 of AIG's Local Civil Rule 56.1 Statement of Undisputed Material Facts, nor the full copy of Scott Horton's notes, reflect everything I shared with Scott Horton in the meetings he and I had to discuss the concerns I raised in connection with the Corruption Risk Questionnaire I submitted to AIG's Compliance Department in 2016. The notes represent Scott Horton's interpretation of what was said in the interview, rather than an actual transcription thereof. Scott Horton's interview was only one of several meetings between me and representatives of the Compliance Department concerning the

compliance violations and internal control weaknesses I observed in connection with Project Kalahari.

13. I was never provided with a copy of the draft talking points on Compliance's findings during my employment with AIG, and only received a copy thereof after my termination by AIG following my commencement of an OSHA proceeding against the company.

14. Pursuant to the job performance rating system employed by AIG during my tenure, employees and managers were required to identify certain attributes as "Fits Poorly" in their evaluation of the employee's performance for a given year.

15. As a result of AIG's performance rating system, the annual performance review for every AIG employee, including the top performers, would indicate that some percentage of his or her performance related attributes "Fits Poorly."

16. Neither Peter Solmssen nor Victoria Bozovic ever shared the feedback with me that they allegedly received in April 2017 from other AIG employees referred to in AIG's Exhibits QQ or RR, or requested that I adjust my performance as a result of any such feedback.

17. One element of value provided by the LOC that was critical to AIG's business operations was the ongoing reliance of AIG insureds on the services provided by the LOC in managing the membership, rates and terms of AIG's approved panels of outside counsel, who provided critical legal defense services to AIG's insureds pursuant to the insurance policies they purchased from AIG.

18. After reports delivered in connection with the DMAIC Process revealed that the LOC in fact consistently met or exceeded client service expectations, based on objectively determined and collected metrics, and did not identify any meaningful need for process improvements at the LOC, Solmssen excluded me from further updates regarding the initiative.

19. My termination occurred less than 50 days after I had provided Solmssen with the headcount reduction proposal he had requested, which I provided within two days of his March 15, 2017 request.

20. Solmssen never once followed up on the headcount reduction proposal I had provided to him - neither to request explanation or clarification, nor to instruct me to pursue implementation thereof.

21. Solmssen abruptly terminated my employment with AIG a mere ten days before the commencement of Brian Duperreault's employment of AIG's Chief Executive Officer, and nearly two months after Peter Hancock announced he would resign as CEO upon the selection of his successor.

22. My access to the Company's IT systems was terminated and I was escorted from AIG's premises prior to having the chance to address my team or my external contacts. Moreover, representatives of AIG sought to interfere with my ability to communicate with my professional network regarding the circumstances of my departure from AIG, notwithstanding the fact that I was forced to initiate such communications from my personal, non-AIG, email and LinkedIn accounts.

23. AIG has, to this date, failed to reissue the shares of Common Stock and performance share units it terminated, or provide a defensible explanation for its alteration, withholding and/or destruction of records relating to its termination of such shares and units.

Dated: New York, New York
September 19, 2022

Respectfully Submitted,

By: _____
Aaron Katzel