```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
AARON KATZEL,                                                 :
                                  Plaintiff,                  :   **AMENDED ORDER AND**
            v.                                                :   **OPINION GRANTING**
                                                              :   **DEFENDANT'S MOTION FOR**
AMERICAN INTERNATIONAL GROUP,                                 :   **SUMMARY JUDGMENT**
                                                              :
                                  Defendant.                  :   20 Civ. 7220 (AKH)
                                                              :
------------------------------------------------------------- X
```

ALVIN K. HELLERSTEIN, U.S.D.J.:

Plaintiff Aaron Katzel ("Plaintiff") brought this suit against his former employer Defendant American International Group ("Defendant" or "AIG"), alleging that he was terminated in retaliation for blowing the whistle on violations of federal fraud and securities laws. He claimed that his termination violated the whistleblower protections of Section 806 of the Sarbanes Oxley Act of 2002 ("SOX") and the Dodd-Frank Act ("DFA"), 18 U.S.C. § 1514A. He also asserted state-law claims for breach of contract and tortious interference with contract based on his failure to receive AIG stock and other equity awards pursuant to a Long-Term Incentive Plan (LTIP), managed by a third-party administrator, causing him damages in excess of $1.2 million dollars.

On September 23, 2022, I issued an opinion and order granting summary judgment to Defendant on the SOX and DFA claims. *See* ECF No. 91. After granting Defendant's motion as to those claims, I declined to exercise supplemental jurisdiction over Plaintiff's state-law claims for breach of contract and tortious interference with contract. *See id.* at 17–18. The Clerk entered Judgment in favor of Defendant on September 30, 2022. *See* ECF No. 92. Now, Defendant seeks to amend that judgment to grant Defendant's motion for

1

summary judgment on Plaintiff's state law claims. For the reasons identified below, Defendant's motion is granted.

## BACKGROUND

The relevant facts appear in the earlier opinion and order granting Defendant's motion for summary judgment. *See* ECF No. 91.

## DISCUSSION

I.   Motion to Amend the Judgment

Rule 59(e) of the Federal Rules of Civil Procedure permits amendment of a final judgment provided that a motion requesting such relief is filed within 28 days of the entry of judgment and that the moving party shows that the Court overlooked controlling decisions or data that "that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Rule 60 provides that a "court may relieve a party or its legal representative from a final judgment" for "mistake, inadvertence, surprise, or excusable neglect" or "any other reason that justifies relief." Fed. R. Civ. P. 60. For the reasons identified below, I exercise my discretion to amend the judgment to grant summary judgment to Defendant on Plaintiff's state law claims.

First, I previously overlooked the independent basis for jurisdiction over Plaintiff's state law claims based on diversity. While Plaintiff did not rely on diversity jurisdiction to bring his state law claims, it is clear that diversity jurisdiction exists. Katzel is a California resident, and AIG is a citizen of Delaware, where it is incorporated, and New York, where it is headquartered. *See* First Amended Complaint, ¶¶ 36–38. The amount in controversy exceeds $75,000. *See id.* ¶¶ 234, 241. Therefore, the Court has jurisdiction under 28 U.S.C. § 1332. The fact that Plaintiff did not assert diversity jurisdiction is of no moment. It is well-established in this Circuit that a Court may find diversity jurisdiction on a motion for reconsideration. *See, e.g.*, *Goureau v. Lemonis*, 2021 WL 4847073, at *7 (S.D.N.Y. Oct. 15,

2021); *Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or., Inc.*, 2014 WL 4374586, at *2 (E.D.N.Y. Aug. 29, 2014); *Agency Dev., Inc. v. MedAmerica Ins. Co. of N.Y.*, 327 F. Supp. 2d 199, 201 (W.D.N.Y. 2004), *aff'd,* 142 F. App'x 545 (2d Cir. 2005).

Second, Katzel has asserted the very same state law claims in a new case pending before this Court (No. 22-cv-09014). Rather than beginning the adjudication process anew, it is far more efficient to amend the judgment in this case to consider the state law claims, which have already been subject to full discovery and summary judgment briefings. These claims have already been fully and fairly litigated before the Court, and the Court has already determined all relevant facts necessary to conclude that Defendant is entitled to summary judgment as a matter of law.

## II. Motion for Summary Judgment

### A. Legal Standard

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must "view the evidence in the light most favorable to the party opposing summary judgment[,] . . . draw all reasonable inferences in favor of that party, and . . . eschew credibility assessments." *Amnesty Am. V. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004). However, the nonmovant may not rely on conclusory allegations or unsubstantiated speculation to defeat the summary judgment motion. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

### B. Analysis

1. Federal Claims (SOX, Dodd-Frank)

      i.    SOX Whistleblower Retaliation

SOX afford protections to whistleblowers, prohibiting the retaliatory discharge of employees that report violations of federal laws relating to fraud or federal securities law. On a motion for summary judgment on a SOX whistleblower retaliation claim, the plaintiff bears "the initial burden of making a prima facie showing of retaliatory discrimination." *Leshinsky v. Telvent GIT, S.A.*, 942 F. Supp. 2d 432, 441 (S.D.N.Y. 2013). In order to do so, an employee must demonstrate that "(1) she engaged in protected activity; (2) the employer knew that she engaged in protected activity; (3) she suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." *Id.* (quoting *Bechtel v. Administrative Review Bd., United States Dep't of Labor*, 710 F.3d 443, 447 (2d Cir. 2013)). Once a plaintiff establishes these elements, a defendant may "rebut this prima facie case with clear and convincing evidence that it would have taken the same unfavorable personnel action in the absence of the protected behavior." *Betchel*, 710 F.3d at 451 (citations omitted). "The defendant's burden under Section 806 is notably more than under other federal employee protection statutes, thereby making summary judgment against plaintiffs in Sarbanes-Oxley retaliation cases a more difficult proposition." *Id.* Summary judgment is appropriate only when, construing all facts in the employee's favor, there is no genuine dispute that the record clearly and convincingly demonstrates that the adverse action would have been taken in the absence of the protected behavior. I hold that Plaintiff cannot establish a prima facie claim for whistleblower retaliation because the record evidence shows that Plaintiff did not engage in protected activity, and even if he did, AIG had no knowledge of it.

Pursuant to 18 U.S.C. § 1514A(a)(1), a plaintiff's activity is "protected" only if he (1) "provide[s] information," (2) "regarding any conduct which the employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities and commodities fraud], any rule or regulation of the Securities and

4

Exchange Commission, or any provision of Federal law relating to fraud against shareholders," to (3) a federal agency, Congress, or "a person with supervisory authority over the employee." *Leshinsky*, 942 F. Supp. 2d at 441–42.

                      a.  Protected Activity

Plaintiff did not engage in protected activity. As an initial matter, as to a purported violation of the federal securities laws, his reporting cannot form the basis for his SOX claim because it occurred five years after his termination. As to his reporting of other fraud-related violations, although Plaintiff reported certain conduct (provided information) to a person with supervisory authority, satisfying the first and third prongs of protected activity, he cannot satisfy the second element because he lacked a reasonable subjective or objective belief that a federal law was violated.

To satisfy the second prong, a plaintiff need not show an actual violation of law or cite a particular statute; however, his belief must be both objectively and subjectively reasonable, and "[t]he reasonableness of a complainant's belief regarding illegality of a respondent's conduct is to be determined on the basis of the knowledge available to a reasonable person in the circumstances with the employee's training and experience." *Mahony v. KeySpan Corp.*, 2007 U.S. Dist. LEXIS 22042, at *14–15 (E.D.N.Y. Mar. 12, 2007) (quoting *Lerbs v. Buca Di Beppo, Inc.*, 2004-SOX-8 at 31 (June 15, 2004).

Plaintiff cannot establish that he subjectively believed that AIG violated a federal law. In 2016, Plaintiff twice submitted certifications attesting that he had no knowledge of violations of either AIG policy, laws, or regulations, including federal laws pertaining to mail fraud, wire fraud, bank fraud, and securities fraud; or knowledge of instances portending a corruption risk, including conflicts of interest, bribery, illegal gratuities, or economic extortion. On November 28, 2016, Plaintiff completed his certification as to AIG's 2016 Code of Conduct and stated that he had no knowledge of any policy or legal violations. Similarly, on December 1,

5

2016, he certified that he had no "knowledge of any fraud perpetrated or alleged or suspected that could result in a material misstatement of AIG's financial statements," or "of any fraud at AIG, perpetrated, alleged or suspected, regardless of materiality."

In his deposition, Plaintiff also confirmed that he did not have a subjective belief that any policy or law had been violated. He testified that he always sought to be truthful and candid in completing the requested certifications, and that he did so in good faith based on his best knowledge and genuine beliefs at the time. Katzel Depo. 12:22–13:16. Although Plaintiff has since responded to interrogatories stating that he believed the mail and wire fraud statutes were violated, this does not create a genuine issue of fact as to his subjective belief. Having admitted that his certifications were made in good faith and on genuine belief, he cannot, by later statement, retroactively establish a subjective belief.

Even assuming that Plaintiff believed that AIG was engaged in fraudulent conduct, within the meaning of SOX, based on his education and experience, such a belief would not have been objectively believable. For example, with respect to his concerns about AIG's failure to maximize shareholder value, these do not support an objective belief that AIG committed fraud or any other enumerated SOX violation. Plaintiff testified that his concerns were with serious gaps in the process by which AIG pursued strategic transactions that "could not be assured that those transactions were being pursued in a way that maximize[d] the value to the company" or "would lead AIG to be able to extract the best possible value out of the asset for the company and its shareholders." Nowhere did he claim that AIG *had* defrauded shareholders or intended to deceive clients or shareholders. His reports of failure to maximize shareholder value fail as a matter of law. *See Kantin v. Metropolitan Life Ins. Co.*, 696 Fed. App'x 527, 529 (2d Cir. 2017) (rejecting whistleblower claim where the plaintiff did not allege the company "defrauded shareholders or intended to deceive clients based on" the reported conduct).

Similarly, Plaintiff's concerns about failures or insufficiencies of internal AIG policies related to conflicts of interest or document preservation also cannot support a SOX claim. Plaintiff never once stated that these concerns were about any alleged misrepresentations to shareholders, and they are otherwise untethered from enumerated SOX violations.

b. AIG's Knowledge of Plaintiff's Protected Activity

Even if Plaintiff could establish that he engaged in protected activity, his claim would still fail because the record evidence does not show that AIG knew of such activity. When Plaintiff certified in 2016 that he had no knowledge of any violations of policy or law or conduct posing a corruption risk, AIG could reasonably rely on those certifications. Although Plaintiff reported his concerns, all of Plaintiff's supervisors testified that they did not perceive Plaintiff as expressing any belief that AIG employees were committing fraud or violating the rules or regulations of the SEC. To wit, Solmssen averred that if there were intimations of fraud, that would have sparked his interest. Because Plaintiff certified that no violations had occurred, and his supervisors had no belief that he was reporting such violations, AIG cannot be said to have had knowledge that Plaintiff engaged in protected activity. His later termination, for unrelated reasons, including his inability or unwillingness to carry out Solmssen's requests, was not related to any protected activity.

In sum, because Plaintiff fails to establish that he engaged in protected activity or that AIG had knowledge of the same, Defendant is entitled to summary judgment as a matter of law on Plaintiff's SOX whistleblower claim.

ii.   SOX and DFA Retaliatory Termination Claim

To sustain a SOX and DFA antiretaliation claim, "an employee must prove by a preponderance of the evidence that (1) [he] engaged in protected activity; (2) the employer knew that [he] engaged in the protected activity; (3) [he] suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." *Murray v. UBS*

*Sec., LLC*, 43 F.4th 254, 2022 U.S. App. LEXIS 21699, at *11 (2d Cir. Aug. 5, 2022). And "to prevail on the 'contributing factor' element, a whistleblower-employee must prove that the employer took the adverse employment action against the whistleblower-employee with retaliatory intent—*i.e.*, an intent to discriminate against an employee . . . because of' lawful whistleblowing activity." *Id.* at *12.

Plaintiff cannot establish a prima facie claim for retaliatory termination because he cannot show that he was terminated with retaliatory or discriminatory intent. As discussed above, none of Plaintiff's superiors understood him to be engaging in whistleblowing when he raised his concerns. Defendant could not have terminated him because of such activity and is therefore entitled to summary judgment as a matter of law on Plaintiff's SOX and DFA antiretaliation claim.

2. State-Law Claims

Under New York law, to establish a claim for breach of contract, a plaintiff must show: (1) an agreement, (2) adequate performance by one party, (3) breach by the other party, and (4) resulting damages. *See Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011) (cleaned up). A claim for tortious interference requires: (1) the existence of a valid contract between the plaintiff and a third party; (2) wrongful interference by the defendant; (3) causing the third party's breach; and (4) injury to the plaintiff. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (citation omitted).

Plaintiff's breach of contract claim fails because Katzel was eligible to receive LTIP Compensation only if he accepted the applicable Award Agreement (with respect to the 2017 LTIP) and executed a contractually required release and waiver of claims (with respect to all LTIP Compensation). Plaintiff did not satisfy either condition precedent; therefore, his breach of contract claim fails. *See Utica Mut. Ins. Co. v. Clearwater Ins. Co.*, 906 F.3d 12, 22 (2d Cir. 2018) ("[F]ailure to satisfy a condition precedent excuses performance by the other party

8

whose performance is so conditioned.") (internal quotation marks omitted). As to the tortious interference claim, Plaintiff fails to establish a prima facie claim because his injury was caused not by any wrongful conduct by Defendant or third-party AIG but by Plaintiff's own conduct—his failure to sign a release and waiver of claims. In addition, Plaintiff's claim fails because he identifies no valid and enforceable contract between him and AIG.

Accordingly, Defendant is entitled to summary judgment as a matter of law on Plaintiff's state-law claims.

## CONCLUSION

For the reasons provided above, Defendant's motion to amend the judgment is granted. The Clerk of Court shall terminate the motion (ECF No. 96), enter judgment in favor of Defendant with costs, and mark the case closed.

SO ORDERED.

Dated: November 28, 2022          /s/ Alvin Hellerstein
       New York, New York         ALVIN K. HELLERSTEIN
                                  United States District Judge